IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

DAN CARMAN, et al.,                    )
                                       )       Case No. 5:22-cv-149-KKC
          Plaintiffs,                  )
                                       )       Judge Karen K. Caldwell
          v.                           )
                                       )
UNITED STATES OF AMERICA, et al.,      )
                                       )
          Defendants.                  )
_____)

**REPLY MEMORANDUM IN SUPPORT OF THE UNITED STATES
OF AMERICA'S MOTION TO DISMISS AMENDED COMPLAINT**

Date:   February 14, 2023                DAVID A. HUBBERT
                                         Deputy Assistant Attorney General

                                         */s/ Kyle L. Bishop*
                                         KYLE L. BISHOP
                                         RYAN O. MCMONAGLE
                                         MOIRA E. GOODWIN
                                         Trial Attorneys, Tax Division
                                         U.S. Department of Justice
                                         P.O. Box 227
                                         Washington, D.C. 20044
                                         202-616-1878 (KLB)
                                         202-514-6866 (fax)
                                         Kyle.L.Bishop@usdoj.gov

## <u>TABLE OF CONTENTS</u>

I.     Introduction...................................................................................................... 1

II.    Argument. ......................................................................................................... 1

  A.   The Court lacks jurisdiction over the plaintiffs' claims.................................. 1

    1.   No plaintiff alleges an injury in fact to a First Amendment interest. ...................... 4

    2.   No plaintiff alleges an injury in fact to a Fourth Amendment interest. ................... 6

    3.   The remaining claims can be dismissed for any of their myriad defects................. 7

  B.   The plaintiffs' opposition fails to show that they have stated plausible claims under the
First, Fourth, or Fifth Amendments, or Article I. ....................................................... 8

    1.   The plaintiffs have not stated, and cannot state, a plausible claim that amended
section 6050I violates the First Amendment. .................................................. 8

    2.   The plaintiffs have not stated, and cannot state, a plausible claim that amended
section 6050I violates the Fourth Amendment ............................................... 13

      i.   There is no reasonable expectation of privacy in personal information connected to
purely commercial transactions. .................................................................... 14

      ii.  The argument that amended § 6050I reveals more "intimate" information than
existing law is illogical and speculative.......................................................... 16

    3.   The plaintiffs' remaining arguments also fail. ....................................... 19

III.   Conclusion. ..................................................................................................... 20

## I.      Introduction.

From the beginning of this case, the plaintiffs have lacked Article III standing for each of their claims, and have not stated a single plausible claim that amended § 6050I violates any provision of the Constitution. Instead of addressing these jurisdictional and pleading defects in their amended complaint, they doubled down on their position, gambling that the addition of a few cursory allegations that they will incur "compliance costs" allows this case to proceed.

The plaintiffs' opposition shows that their gamble did not pay off. First, they still lack standing. Bare allegations of "compliance costs" do not confer standing for any of the plaintiffs' separate, very different constitutional claims under Article I, and the First, Fourth, and Fifth Amendments. That is a fatal flaw that they have not (and, evidently, cannot) correct.

Second, even if the plaintiffs established standing, their purported claims for relief are so facially implausible that they do not state violations of the Constitution. The required reporting of high-dollar transactions already recorded on a public ledger in connection with a trade or business does not implicate expressive associations, so it cannot violate the First Amendment. And such reporting does not implicate private information at all—let alone "intimate" private information— so it does not constitute a "search" under the Fourth Amendment. Because the plaintiffs' remaining constitutional arguments are similarly flawed, the Court should dismiss.

## II.     Argument.

### A.      The Court lacks jurisdiction over the plaintiffs' claims.

The plaintiffs' various challenges to the amended § 6050I are meritless. But the Court need not reach those merits, because they are not presently justiciable. The First Amendment claim— to which the plaintiffs dedicate much of their brief—must be dismissed for lack of standing. The Fourth Amendment claim can also be dismissed for lack of standing, and alternatively should be

dismissed as unripe and improperly facial. And the plaintiffs make only passing reference to their remaining claims, which can be dismissed for any number of defects, as set out below.

Absent a party suffering an injury, "courts have no charter to review and revise legislative and executive action." Summers v. Earth Island Inst., 555 U.S. 488, 492 (2009). And the standing analysis must be "especially rigorous" when a claim challenges the constitutionality of an action taken by one of the other co-equal branches of government. Clapper v. Amnesty Intern. USA, 568 U.S. 398, 408 (2013).

The parties agree that the plaintiffs bear the burden to establish their standing by showing an injury in fact caused by the defendant that is redressable by this court. (See dkt. 29-1 at 8; dkt. 32 at 10). The parties disagree, however, on what the plaintiffs must allege to make that showing. The plaintiffs primarily argue that because they "will be subject" to the amended statute's reporting mandate, they have standing "to challenge" it under every theory they assert. (Dkt. 32 at 11).

The plaintiffs' five-count complaint is not, as they represent, a singular challenge, requiring only one standing analysis. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing *for each claim* that they press." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208 (2021) (emphasis added); see also Kanuszewski v. Mich. Dep't of Health & Hum. Servs., 927 F.3d 396, 406 (6th Cir. 2019) ("Plaintiffs raise numerous claims, each of which must independently meet the requirements for standing."); Vonderhaar v. Village of Evendale, Ohio, 906 F.3d 397, 401 (6th Cir. 2018) ("When litigants present multiple claims, as the parties do here, they must show injury for each claim they press.").

Thus, contrary to the plaintiffs' arguments, (see dkt. 32 at 10–13), each cause of action requires a concrete, particularized, nonspeculative injury. See Kanuszewski, 927 F.3d at 406–07 (performing a separate standing analysis for each cause of action). And that injury "must be to a

legally cognizable right." <u>Parsons v. U.S. Dep't of Justice</u>, 801 F.3d 701, 710 (6th Cir. 2015). To sustain a First Amendment challenge, the plaintiffs needed to allege that they had suffered (or will imminently suffer) an injury to a First Amendment right, a Fourth Amendment challenge required allegations of an injury to a Fourth Amendment right, and so on.

The plaintiffs have failed to allege standing for all the reasons set forth in the government's motion to dismiss. (Dkt. 29-1 at 8–10). But more specifically (and as the plaintiffs' opposition fails to acknowledge), the plaintiffs' general status as potential "objects" of the reporting requirement does not implicate any constitutional interests. (Dkt. 32 at 11). The closest they come to a non-speculative, concrete injury is in allegations of the *de minimis* compliance costs associated with filing the disclosure form. (<u>Id.</u> at 13–14). But even if this were a certainly impending financial injury, it is not an injury to any personal constitutional right. <u>Cf.</u> <u>Smith v. Jefferson Cty. Bd. of Sch. Comm'rs</u>, 641 F.3d 197, 207 (6th Cir. 2011) (citing <u>Barrows v. Jackson</u>, 346 U.S. 249, 256 (1953) ("[E]ven when litigants have established a substantial injury from a government action, they 'cannot challenge its constitutionality unless they can show that they are within the class whose constitutional rights are allegedly infringed.'").

The plaintiffs do not allege that these compliance costs infringe their right of association or a reasonable expectation of privacy. <u>Cf.</u> <u>id.</u> No individual constitutional rights are impacted by these alleged compliance costs. Thus, if the compliance costs can sustain plaintiffs' standing to bring *any* challenge to this statute, it is only to argue the statute exceeds Congress's enumerated powers. Any separate, specific constitutional claim premised on a violation of an *individual* right requires a specific injury to that constitutional interest. No plaintiff made that showing.[1]

---

[1] The government does not dispute that only one plaintiff need establish standing for a case to move forward. (<u>See</u> dkt. 32 at 11 n.3, responding to dkt. 29-1 at 8). The government does *not*

(continued...)

The precise jurisdictional question is not whether the plaintiffs have established standing to bring *a* challenge to the statute (which they have not); but whether they have established standing to bring *each* challenge. And because they have not alleged the required injuries, they cannot establish standing to bring the counts premised on individual constitutional rights.[2]

### 1.  No plaintiff alleges an injury in fact to a First Amendment interest.

The plaintiffs' opposition relies on a highly attenuated series of allegations and assumptions to establish their purported First Amendment injuries. Those are not enough. And even if that chain of speculation could be accepted, they would still lack standing because their 'chilling' injury fails as a matter of law.

To challenge a statute on First Amendment grounds, a party must allege an injury to a First Amendment interest. See ACLU v. NSA, 493 F.3d 644, 661 (6th Cir. 2007). Specifically, a plaintiff "must establish that he or she is regulated, constrained, or compelled directly" by the challenged government action. Id. The courts have repeatedly emphasized that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a

---

argue that this Court "must assess the standing of all remaining plaintiffs." (Id.). The government was merely noting the Sixth Circuit's recent conclusion that *if* a court analyzes the potential standing of a plaintiff and finds that standing is lacking, that plaintiff must be dismissed. Kentucky v. Yellen, 2022 WL 17076099, at *12 n.12 (6th Cir. Nov. 18, 2022).

[2] The plaintiffs appear to suggest that all that is required to establish standing to bring a constitutional claim is an allegation that a constitutional violation occurred. (Dkt. 32 at 13 (citing Gerber v. Herskovitz, 14 F.4th 500, 507 (6th Cir. 2021)). But Herskovitz said no such thing. The plaintiffs in Herskovitz brought claims for extreme emotional distress after prolonged, targeted picketing of their synagogue by anti-Israel protestors. Id. at 506–07. The relevant harm was emotional distress. The defendants raised the First Amendment, arguing the plaintiffs could not be legally injured by offensive speech if it was protected by the First Amendment, and claiming the plaintiffs needed to show that the speech was not protected at the standing stage to rest on the emotional distress injury. Id. This case is nothing like that case, and the plaintiffs' citation to it is absurd. A constitutional challenge—like any other challenge—requires an injury in fact, and conclusory statements that a constitutional violation occurred are not sufficient.

threat of specific future harm." <u>Id.</u> at 660 (quoting <u>Laird v. Tatum</u>, 408 U.S. 1, 13–14 (1972). And, to emphasize, that harm must be to a First Amendment interest, such as when a rule or policy explicitly prohibits or compels protected speech, or where allegations of a chilling effect "are accompanied by concrete allegations of reputational harm." <u>Parsons</u>, 801 F.3d at 711. Even if compliance costs are an injury, they are not an injury to a First Amendment interest. And as explained in the government's opening brief, financial information is not protected speech or a protected association, so compelled disclosure of that information does not implicate the First Amendment. (Dkt. 29-1 at 13).

The complaint alleges that, due to the possibility of the government learning of his unreported expressive activities, Carman will "be less likely to make contributions to advocacy and religious organizations and engage in other expressive activities." (Compl. ¶ 146). This appears to be the extent of the complaint's attempt to allege a First Amendment injury. As explained in the government's motion to dismiss, this theory of injury is implausible, even at the pleadings stage. (Dkt. 29-1 at 14). For the government to learn Carman donated cryptocurrency to his local advocacy group, all of the following must occur: (1) he must use the same cryptocurrency account to engage in both a reportable transaction and a donation to the advocacy group; (2) the advocacy group must engage in a reportable transaction using the same cryptocurrency account it used to receive that donation; (3) the government must have the time, desire, and infrastructure to take information from these separate § 6050I reports and search the blockchain for transactions entered into between these account; (4) the government must somehow learn the transaction was donative; and (5) the government's knowledge that such a transaction occurred must harm Carman in some concrete way.

This causal chain is speculative to the point of absurdity. And it is far removed from the type of "direct" regulation required to show a First Amendment injury. ACLU, 493 F.3d at 661. Even if all contingencies were removed and Carman could draw a straight line from the reporting of a business transaction to the government's knowledge of an expressive association, the theory would still fail as a matter of law. It is not enough that the government could know of a person's associations; that is not an injury in fact. Rather, the plaintiffs must show that the government will *do* something with that information. See Parsons, 801 F.3d at 711–12; Morrison v. Bd. of Educ. of Boyd Cty., 521 F.3d 602, 610 (6th Cir. 2008). The plaintiffs do not make this showing.

The information required to be reported by the statute is not protected as speech or association, thus potential enforcement of the reporting statute does not create a risk of First Amendment injury. (Dkt. 29-1 at 13). And even if Carman's convoluted hypothetical could be accepted—and it should not be—the subjective chill to his associations he claims he would experience does not create an injury in fact. Carman does not allege facts from which the Court could find a potential First Amendment injury, thus he cannot sustain a First Amendment claim.[3]

### 2. No plaintiff alleges an injury in fact to a Fourth Amendment interest.

To pursue a Fourth Amendment challenge, the plaintiffs needed to allege some injury to their Fourth Amendment right to be secure against unreasonable searches and seizures. See Bonds v. Cox, 20 F.3d 697, 701 (6th Cir. 1994). The Sixth Circuit has said it "would be unprecedented for a court to find standing for a person to litigate a Fourth Amendment cause of action without

---

[3] Coin Center is the only other plaintiff that appears to attempt to allege facts in any way related to a First Amendment injury. Coin Center lacks standing for all the same reasons as Carman: (1) its theory requires acceptance of the improbable, attenuated chain of events that should be rejected as unduly speculative; (2) the resulting chill from that chain of events allegedly experienced by its donors is not an injury in fact; and (3) Coin Center failed to respond to the government's argument that it should not be permitted to seek relief on behalf of its donors because it is unable to satisfy the requirements of third-party standing. (Dkt. 29-1 at 16).

any evidence that the defendant (i.e., government) had actually subjected that particular person to an illegal search or seizure." <u>ACLU v. NSA</u>, 493 F.3d 644, 655 n.11 (6th Cir. 2007). No plaintiff alleges the government has already collected information about their cryptocurrency transactions.

Instead, the plaintiffs complain the reporting requirement will, *in the future*, force them "to disclose their names, addresses, Social Security numbers, and transactional details to the government and others." (Dkt. 32 at 15). Even if the plaintiffs had a reasonable expectation of privacy in this information—which they do not, (<u>see</u> dkt. 29-1 at 23–24)—the reasonableness of any collection of that information can only be challenged in an as-applied case after such collection occurs. Fourth Amendment challenges require an actual, ongoing Fourth Amendment injury. <u>E.g.</u>, <u>Kanuszewski</u>, 927 F.3d at 409. The most the plaintiffs can say is that they will, in the future, likely be compelled to provide financial information in which they do not have a reasonable expectation of privacy. That allegation does not suffice for Fourth Amendment purposes.

### 3.    The remaining claims can be dismissed for any of their myriad defects.

The plaintiffs do not spend significant time on their remaining claims, and neither should the Court. The Court can dismiss these claims for lack of standing if it determines that the *de minimis* costs associated with filing a form do not create an injury in fact. (Dkt. 29-1 at 12). Or it could hold that the injury is not sufficiently imminent where the forms need not be submitted for another year. (<u>Id.</u> at 11). It could conclude that none of these claims are ripe, as the possibility of future developments makes the claims unsuited for present judicial decision.[4] (<u>Id.</u> at 19–21). It can

---

[4] The Department of the Treasury is currently drafting regulations that will provide additional guidance on the reporting requirement, a factual development likely to affect the outcome of this challenge. <u>See</u> Returns Relating to Digital Assets in Excess of $10,000 Received in a Trade or Business, REG-104347-22, Notice of Proposed Rulemaking, <u>https://perma.cc/H9UA-HTUF</u>; <u>cf.</u> <u>Nat'l Rifle Ass'n of Am. v. Magaw</u>, 132 F.3d 272, 293 (6th Cir. 1997). The IRS recently published guidance delaying a similar reporting requirement. <u>See</u> <u>Transitional guidance under</u>

(continued...)

reject the claims as improper facial challenges, particularly the Fourth and Fifth Amendment challenges that should and must, respectively, be brought as as-applied challenges. (Id. at 20). Or, for the reasons explained below, the Court can roundly reject these claims on their merits. Regardless of how the Court decides to proceed, this complaint should be dismissed in full.

**B.      The plaintiffs' opposition fails to show that they have stated plausible claims under the First, Fourth, or Fifth Amendments, or Article I.**

Even if the plaintiffs pled enough facts to show they have standing, they have no cognizable claims for relief for the welter of constitutional violations they assert. Their purported First Amendment claim fails because § 6050I is, on its face, narrowly tailored, and suffers from none of the constitutional infirmities at issue in Bonta. Their Fourth Amendment claim fails because they do not deny that the information over which they assert a privacy interest is either disclosed to the government under other statutes, disclosed to third parties as a matter of course, or not subject to § 6050I at all. Because their remaining claims also fail, the Court should dismiss.

**1.      The plaintiffs have not stated, and cannot state, a plausible claim that amended section 6050I violates the First Amendment.**

The plaintiffs' First Amendment claim fails because § 6050I is, on its face, narrowly tailored to the United States' paramount interest in identifying taxpayers with large cash incomes.[5] The plaintiffs' response is twofold. First, they argue that the Court may not determine whether exacting scrutiny is satisfied on a motion to dismiss, and presumably must instead allow discovery and summary judgment briefing. Second, they argue that they have sufficiently alleged that

---

sections 6045 and 6045A with respect to the reporting of information on digital assets by brokers, Announcement 2023-2, https://www.irs.gov/pub/irs-drop/a-23-02.pdf.

[5] Recall, cash includes digital assets such as cryptocurrency. 26 U.S.C. § 6050I(a)(3) (referencing 26 U.S.C. § 6045(g)(3)(D)).

§ 6050I is not narrowly tailored because several purportedly "less restrictive means" exist that burden expressive associations less.

As to the first procedural point, it is simply wrong that a court may never resolve a First Amendment claim at the pleading stage. If a court "does not need new facts, [it] can decide the issue of narrow tailoring as a matter of law" by comparing this case to similar cases. O'Toole v. O'Connor, No. 2:15-cv-1446, 2016 WL 4394135, at *3 (S.D. Ohio Aug. 18, 2016). Here, the plaintiffs do not identify disputed factual issues that the Court needs to resolve prior to ruling, and there are none.[6] And to the extent the plaintiffs take issue with facts referenced by the government that go beyond the pleadings, they ignore that these facts may be considered as "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." Wyser-Pratte Mgmt. Co. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005).

As for the merits argument, it is beyond dispute that the United States has a "sufficiently important interest" in the assessment and collection of taxes for purposes of a First Amendment analysis. Collett v. United States, 781 F.2d 53, 55 (6th Cir. 1985).[7] Indeed, the Supreme Court has said the United States has a "paramount interest in prompt and certain collection" of taxes. United

---

[6] The closest the plaintiffs come is their contention that there is a factual dispute over whether the government needs to "force taxpayers to report payments that are not income." (Dkt. 32 at 24). This is, frankly, nonsense. By its terms, § 6050I requires the reporting of cash received in "the course of [a] trade or business," i.e., payments that are likely income for the recipient. 26 U.S.C. § 6050I(a)(2); see also 26 U.S.C. § 61(a)(2) (defining income to expressly include "[g]ross income derived from business").

[7] The plaintiffs argue that Collett was "about the government's interest in not allowing people to opt-out from taxes that fund foreign wars." (Dkt. 32 at 26). This misrepresents Collett. The Collett plaintiffs filed frivolous income tax returns claiming deductions based on "the percentage of the federal budget dedicated to military use." They argued that the imposition of a frivolous filing penalty violated the First Amendment. The Sixth Circuit rejected that claim because "the maintenance and viability of the tax system is a sufficiently important governmental interest to justify incidental regulation upon speech and non-speech communication." 781 F.2d at 55.

9

States v. Rodgers, 461 U.S. 677, 711 (1983). The congressional record also shows that the original § 6050I was enacted to "enable the Internal Revenue Service to identify taxpayers with large cash incomes." S. Rep No. 98-300, at 121 (1983). And courts acknowledge that this is the purpose of § 6050I. E.g., United States v. Golberger & Dubin, P.C., 935 F.2d 501, 503 (2d Cir. 1991).[8]

The plaintiffs nonetheless allege that the United States cannot show that § 6050I is sufficiently "narrowly tailored" at the pleading stage. (Dkt. 32 at 26–27). In support, they rely exclusively on the Supreme Court's decision in Americans for Prosperity Foundation v. Bonta, 141 S. Ct. 2373 (2021). Bonta involved a First Amendment challenge to a California regulation requiring tax-exempt organizations to file their federal Form 990 information returns with the state Attorney General, along with required attached schedules disclosing their major donors' identities. Id. at 2379. The Court concluded that the state regulation could not withstand exacting scrutiny because there was not a "substantial relation" between the universal disclosure requirement and the state's stated interest in preventing "wrongdoing by charitable organizations." Id. at 2383.

Bonta shares little (if anything) in common with this case. To start, the asserted governmental interests are different: California's stated interest was in preventing essentially consumer fraud by charities claiming tax exemption. The United States' interest is in ensuring easy-to-hide income is disclosed so the government can ultimately collect any taxes owed on that income. The latter interest is not just important, it is "paramount." Rodgers, 461 U.S. at 711.

Bonta also involved the compelled disclosure of information squarely related to expressive associations, a core First Amendment interest. Here, in contrast, the United States requires the disclosure of information solely about commercial transactions. The plaintiffs do not argue these

---

[8] The plaintiffs' suggestion that the interest served by § 6050I is just a matter of "administrative convenience" rather than  identifying taxable income that would otherwise be difficult to detect has no basis in either the congressional record or the case law.

are protected, expressive activities. The plaintiffs instead argue that disclosure of the information required by § 6050I will reveal blockchain addresses, which will in turn reveal other transactions that show expressive associations. In other words, while the Bonta plaintiffs' First Amendment injury was direct, the plaintiffs' is highly attenuated, requiring address-by-address analysis of the blockchain, and knowledge of the addresses of not only the plaintiffs, but also of entities with which the plaintiffs allege an intent to engage in expressive activities.

And finally, the plaintiffs neglect to mention that (unlike Coin Center), the tax-exempt plaintiffs in Bonta *were* required to disclose their major donors to the United States on their annual Form 990 information returns. Bonta, 141 S. Ct. at 2380.   And the Bonta plaintiffs *did not* challenge those requirements. Compare id. at 2379–80 (noting 501(c)(3) charities must disclose donors contributing more than $5,000 in a particular year under 26 C.F.R. §§ 1.6033-2(a)(2)(ii)(f), (iii)) with dkt. 32 at 31 (noting 501(c)(4) social welfare organizations need not report their donors' personal information to the IRS on their annual returns under 26 C.F.R. § 1.6033-2(a)(2)(ii)(F)).

In light of these differences, § 6050I is, on its face, far more narrowly tailored than the California statute at issue in Bonta. The Supreme Court has held that narrow tailoring requires only that the law's objectives "cannot be served equally well in significantly less burdensome ways."[9] Am. Party of Tex. v. White, 415 U.S. 767, 780–81 (1984). Section 6050I does not require the reporting of expressive associations like donations to tax-exempt organizations. Its purpose is to identify cash (and equivalent) receipts, and it requires only the disclosure of certain commercial transactions that constitute income to a taxpayer. 26 U.S.C. § 61(a)(2). And it has a much higher dollar threshold than other information reporting requirements. Cf. 26 U.S.C. § 6041(a) (annual

---

[9] The United States erroneously cited in its opening memorandum to both Bonta and White for this quote. As plaintiffs correctly note, the quoted language does not appear in Bonta. (Dkt. 32 at 24 n. 13). As they neglect to mention, however, it does appear in White.

information reporting for payments totaling $600 in a single year), 26 C.F.R. § 1.6012-2(e) ($1,000 threshold for exempt organization to report taxable unrelated business income), 26 C.F.R. § 1.6033-2(a)(2)(ii)(F) ($5,000 threshold for 501(c)(3) charities to report donor information on annual returns).

The plaintiffs—again relying on <u>Bonta</u>—insist that other "less burdensome" means of identifying cash (and equivalent) income exist. But all of the plaintiffs' suggestions are illogical on their face. Two warrant further mention:[10]

**<u>"Subpoenas and audit letters."</u>** (Dkt. 32 at 26). Subpoenas and audit letters serve little purpose when, as here (just as with traditional cash), the transactions could be anonymous absent § 6050I. Unlike the plaintiffs in <u>Bonta</u>, who registered with the state and filed federal information returns, blockchain users operate as anonymously as they choose. The plaintiffs do not explain how the IRS can subpoena or send an audit letter to a blockchain address they claim is anonymous.

**<u>Limiting "use of reports for non-tax purposes."</u>** (Dkt. 32 at 26). The plaintiffs argue that the United States' ability to share reporting information collected under § 6050I with other law enforcement agencies under a completely separate statute—26 U.S.C. § 6103(l)(15)—renders § 6050I insufficiently narrowly tailored. But the plaintiffs are unable to explain how § 6050I can be facially overbroad because a completely separate statute permits further disclosure. The plaintiffs cannot sneak a collateral constitutional attack on a separate disclosure statute without stating that as a separate cognizable claim. They do not even attempt to do so.

---

[10] The other two barely warrant discussion. The removal of "transaction dates" is nonsensical. (<u>See</u> dkt. 32 at 26). The plaintiffs do not even attempt to explain how dates of transactions could affect the government's ability to uncover expressive associations, and in any event, § 6050I requires disclosure within 15 days of the transaction. And as explained below, § 6050I already does not cover pure donations to nonprofits, it covers only remittances in connection with a trade or business, so amending its language to exempt them would have no effect.

### 2. The plaintiffs have not stated, and cannot state, a plausible claim that amended section 6050I violates the Fourth Amendment

As discussed in the United States' motion to dismiss, (dkt. 29-1 at 22–32) the plaintiffs' Fourth Amendment claim fails on its face. The plaintiffs do not have a reasonable expectation of privacy in the information they are required to report under § 6050I in connection with transactions greater than $10,000 received in the course of a trade or business. And they have failed to clear the high standard required of a facial Fourth Amendment challenge: showing that there exists "no set of circumstances" under which § 6050I would be constitutional.[11]

The plaintiffs' arguments that § 6050I violates the Fourth Amendment are unavailing. First, the opposition ignores that, under existing law, the plaintiffs cannot plausibly allege they have a reasonable expectation privacy in the information § 6050I requires they disclose. Instead of addressing that existing law, they simply ignore it.

Unable to show that the disclosure of information about the transactions themselves violates the Fourth Amendment, the plaintiffs turn to a speculative chain of follow-on effects that

---

[11] Contrary to the plaintiffs' assertions, City of Los Angeles v. Patel did not change this rule. (See dkt. 32 at 20, 35–36 (citing 576 U.S. 409 (2015)). The plaintiffs can sustain a facial challenge only if there is "no set of circumstances" under which the statute could be enforced constitutionally. Bonta, 141 S. Ct. at 2387. In Patel, the plaintiffs challenged a city ordinance requiring hotel operators to record information about their guests, and mandating that those records be made available for police inspection. 576 U.S. at 412–13. Only the latter point was challenged, and the parties stipulated that the plaintiffs had been subjected to record inspections without consent or a warrant. Id. at 413–14. A divided Supreme Court allowed a facial Fourth Amendment challenge to the ordinance, holding that such facial challenges are available "to statutes authorizing warrantless searches." Id. at 416. In Patel, the parties did not contest that the statute authorized warrantless searches—the police physically entered hotels to view tangible records. Here, the question is whether the amended statute authorizes a search at all; that is, whether taxpayers have a reasonable expectation of privacy in the information required to be reported. Patel does not govern in those circumstances. Cf. Brennan v. Dickson, 45 F.3d 48, 61 (D.C. Cir. 2022) (applying the 'no set of circumstances' standard to a facial Fourth Amendment challenge post-Patel).

ends with the potential for disclosure of "highly personal" information. This argument cannot save their purported Fourth Amendment claim.

> ### i. There is no reasonable expectation of privacy in personal information connected to purely commercial transactions.

As discussed more fully in the motion to dismiss, under existing law, the plaintiffs lack a reasonable expectation of privacy in the details of their commercial transactions of $10,000 or more for several reasons, and thus any reports received by the IRS via § 6050I do not constitute a search. (Dkt. 29-1 at 23–29). They are already required by law to collect and report much of this information on a yearly basis for far lower dollar amounts than are at issue here. (Id. at 23–24 (discussing 26 U.S.C. §§ 6041(a), 6051(a), 26 C.F.R. §§ 1.6041-6(a), 301.6051-1(a))). They do not deny that at least some blockchain users voluntarily share this information with each other (this fact alone is sufficient to defeat their facial challenge). And § 6050I has already survived prior Fourth Amendment challenges. (Id. at 25 (discussing Golberger & Dubin, 935 F.2d at 503)).

The plaintiffs largely ignore these inconvenient cases, statutes, and regulations. To begin, the plaintiffs ignore the Second Circuit's decision in Goldberger & Dubin. There, the Second Circuit flatly rejected a similar Fourth Amendment challenge to (pre-amendment) § 6050I, noting that "contentions relative to the Fourth and Fifth Amendments have been rejected consistently in cases under the Bank Secrecy Act by both the Supreme Court and this Court."[12] Goldberger & Dubin, 935 F.2d at 503.

The plaintiffs also do little to address other provisions in the Internal Revenue Code that either already require them to disclose the same information about the transactions here (in the

---

[12] And for good reason. Under the plaintiffs' theory, laws preventing banks from allowing customers to use anonymous accounts to conduct business would also be unconstitutional. See, e.g., Matter of Seizure & Search of Motor Yacht Tango, 597 F. Supp. 3d 149, 162 (D.D.C. 2022) (describing laws that require banks to know the identity of their customers).

case of Carman) or show that § 6050I does not reach the relevant transactions (in the case of Coin Center). Their failure to address either issue is fatal to their facial challenge.

Carman, for his part, does not deny that he and his clients exchange the very information over which they claim a privacy interest here, and that they report it to the government on other information returns like a Form-1099. (Dkt. 29-1 at 29–30). Instead, he evades the issue, stating only that "the government's assumptions about what Mr. Carman shares in his business relations appear nowhere in the complaint." (Dkt. 32 at 36). But Carman alleges in the complaint that he "intends to receive cryptocurrency as *payment for services* in his business as a Bitcoin consultant." (Compl. ¶ 136, emphasis added). And absent some other fact Carman has not pled, those payments for services presumptively trigger the reporting requirements of 26 U.S.C. § 6041(a). The only "assumption" involved in that analysis is the assumption Carman and his clients comply with existing law.[13] And the plaintiffs have no answer for it: Carman and his clients are either required to report that information to the United States and do report it (in which case they cannot claim a reasonable expectation of privacy) or they do not (and are violating the law). But whether they do or do not, the fact that others undoubtedly do comply with § 6041 defeats the plaintiffs' facial challenge. United States v. Salerno, 481 U.S. 739, 745 (1987).

---

[13] The plaintiffs make a litany of misleading or incorrect statements about existing reporting requirements. They argue that other information reporting may not be shared with foreign, local, state, and federal law enforcement. Not so. See, e.g., 26 U.S.C. §§ 6103(d) (sharing of return information with state tax authorities), 6103(h) (disclosure to federal officials in matters involving tax administration), 6103(i) (disclosure of return information to federal officers for administration of laws not relating to tax administration). They argue those requirements "require far less intensive reporting." That is wrong too. Forms 1099 include much of the same information as the Form 8300 at issue here (*e.g.*, names, addresses, and taxpayer identification numbers). (Dkt. 29-1 at 24). And finally, they claim that the government imposes "punishment for non-compliance" with reporting requirements. That is misleading: 26 U.S.C. § 7203 creates criminal liability only for those who "willfully fail[]" to file required information returns.

Coin Center similarly fails to explain how § 6050I "forces Coin Center to report anonymous donations." (Dkt. 32 at 36). The United States explained in its motion to dismiss that tax-exempt organizations described in § 501(c)(4) like Coin Center do not have to disclose donor information with their annual information returns. (Dkt. 29-1 at 31 (discussing 26 C.F.R. § 1.6033-2(a)(2)(ii)(F) (disclosure of donor information))). It also explained that "donations" are not subject to the reporting requirements of § 6050I. Coin Center has now had two opportunities—in the amended complaint, and in the opposition to the United States' motion to dismiss that amended complaint—to offer any facts to support its assertion that the donations it receives are somehow "in connection with a trade or business." But it has not. So the Court need not accept this legal conclusion couched as a fact. Courser v. Allard, 969 F.3d 604, 615 (6th Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Again, this failure both defeats Coin Center's standing, and demonstrates the invalidity of the plaintiffs' entire facial challenge.

ii.     The argument that amended § 6050I reveals more "intimate" information than existing law is illogical and speculative.

In apparent acknowledgment that they cannot prevail under the Fourth Amendment solely based on the information § 6050I actually requires them to disclose, the plaintiffs instead focus much of their attention on: (i) arguing that the third-party exception to the Fourth Amendment does not apply, and (ii) speculating about what *other* information the government *might* be able to discern from the plaintiffs' public ledger addresses. These arguments fare no better.

Under the "third-party doctrine" the government may obtain information about individuals from third parties without implicating the Fourth Amendment. That includes obtaining information from banks about bank customers. United States v. Miller, 425 U.S. 435, 443 (1976). And, particularly relevant here, it includes information that individuals voluntarily reveal to the public on a blockchain ledger. United States v. Gratkowski, 964 F.3d 307, 311 (5th Cir. 2020).

The plaintiffs do not dispute the merits or validity of the third-party doctrine. Instead, they argue that it should not apply here. First, they argue that third-party doctrine cannot apply because users do not voluntarily disclose private information to each other. Specifically, they argue blockchain users do not "need to share [their] personal information . . . with anyone in order to use the technology," do not "need to provide [personal information] to a bank or similar middleman," and do not "need to share [their] identifying information even with the parties with whom [they] transact." (Dkt. 32 at 33).

But whether plaintiffs "need to" disclose personal information to use blockchain technology or transact business on the blockchain is not the relevant question. Without § 6050I, people do not "need to" disclose personal information in connection with a $10,000 traditional cash transaction either, and in many cases would not. That is why § 6050I exists: "to unearth the 'underground economy'" of cash transactions. Goldberger & Dubin, 935 F.3d at 503.

The question for the third-party doctrine (and for the purposes of defeating a facial challenge) is whether users disclose that information voluntarily to each other.[14] The answer is they do. Throughout their original complaint, amended complaint, and now their opposition, the plaintiffs dance around that question.

And there is good reason for that. First, even Bitcoin's own informational website admits: "since users usually have to reveal their identity in order to receive services or goods, Bitcoin

---

[14] The plaintiffs' assertion that "[n]o case says that information falls within the third-party exception when that information is *not* shared," is a red herring. (Dkt. 32 at 33, emphasis in original). All of the cases the plaintiffs cite—Smith v. Maryland, 442 U.S. 735 (1979), United States v. Miller, 425 U.S. 435 (1976), were *as-applied* challenges raised in motions to suppress in criminal cases. Here, as noted throughout the United States' brief, the plaintiffs bring a facial challenge to the statute itself, so they must show that there is "no set of circumstances" in which the statute is valid. See Bonta, 141 S. Ct. at 2387. That includes showing that there is "no set of circumstances" in which the third-party doctrine would apply. See id.

addresses cannot remain fully anonymous." https://perma.cc/SP44-FS4P.  And the blockchain on which they voluntarily choose to transact business is *public*. The choice to conduct business on a public, permanent ledger, coupled with the fact that users *do* share personal information with each other more than satisfies the third-party exception. Gratkowski, 964 F.3d at 311.

The plaintiffs argue that blockchain transactions are somehow different from traditional cash transactions and banking records because the disclosure of blockchain addresses could create follow-on effects, including the potential disclosure of more "intimate" information. According to them, such information includes: whether their purchases suggest "symptoms of disease," "whether they have alcohol, drug, and gambling addictions," or "what religious organizations they tithe to, what they are reading, or whom they are dating." (Dkt. 32 at 30). They posit this defeats the third-party exception because the third-party exception permits disclosure providing only a "limited" view into users' affairs. (Id. at 34).

As a legal matter, the plaintiffs' gloss on the third-party doctrine is incorrect. The Supreme Court has not, as the plaintiffs suggest, held that the third-party doctrine can only provide a "limited" view of a person's affairs. The Supreme Court held that, wherever the line is,  obtaining an "all-encompassing record of a [person]'s whereabouts" for 127 days crosses it. Carpenter v. United States, 138 S. Ct. 2206, 2217 (2018). In contrast with the records in Carpenter, the information on the blockchain when used in a trade or business is not so "unique[ly]" personal that it nonetheless warrants Fourth Amendment protections. Id.

As a factual matter, the idea that the disclosure of receipts of $10,000 in a trade or business will inevitably lead to disclosure of highly personal information is pure speculation. One can see how, in Carpenter, the tracking of a person's physical location twenty-four hours a day for a period of 127 days could reveal personal information, beyond a person's reasonable expectations. But the

causal chain leading from disclosure of one (or even several) reportable transactions in connection with a trade or business to whom someone is dating, what disease they might have, or whether they have a gambling problem,[15] is (at best) far more attenuated.

The dating example illustrates this. Connecting one blockchain user to another would require that both conduct transactions of $10,000 or more in connection with a trade or business using the same addresses they use for "personal" transactions. That information could enable the government to link their identities to specific addresses, those addresses to each other, and their commercial transactions to their non-commercial transactions. But this is where the plaintiffs' causal chain falls short. The plaintiffs do not explain how the disclosure of that data would show anything about that relationship other than at some point they exchanged money with each other for some reason. Even if they regularly exchanged money, the only relationship that would reveal is transactional. For that reason, all "location data collected automatically by simply turning on a cell phone" (Carpenter) and "all transactions an individual voluntarily chose to transact with cryptocurrency using a specific address" (this case) are, on their face, materially different.

### 3. The plaintiffs' remaining arguments also fail.

The plaintiffs devote little time to their remaining arguments. As to their argument the statute is unconstitutionally vague, the plaintiffs' premise this on their argument that legal terms are irreconcilable with cryptocurrency. Each of the three phrases they argue create vagueness—"person," "receipt," and "outside the United States"—are legal concepts faced by taxpayers in numerous other contexts. See 26 U.S.C. § 7701(a)(1) (defining person); Martin v. Comm'r, T.C. Memo. 2021-35, 2021 WL 1117032, at 17–18 (defining when income is received); Mazzei v.

---

[15] Gambling problems may not be the best example in support of the plaintiffs' argument, since gambling winnings must already be reported as income, and gambling proceeds in excess of $5,000 are subject to mandatory withholding. 26 U.S.C. § 3402(q)(3).

<u>Comm'r</u>, 998 F.3d 1041, 1048–49 (9th Cir. 2021) (analyzing whether income was derived within or outside of the United States). The plaintiffs point to no cases in which courts facially struck down these (and other) statutes as unconstitutionally vague for using these phrases, and there is no support for such a finding here. And while the plaintiffs interpret recent Supreme Court precedent to allow facial challenges to succeed even when there are examples the statute can be constitutionally applied, courts disagree with that interpretation. <u>See, e.g.</u>, <u>74 Pinehurst LLC v. New York</u>, --- F.4th ----, 2023 WL 1769678, at *1 (2d Cir. 2023).

The plaintiffs also repeat their enumerated powers argument. Oddly, the plaintiffs challenge the government's cases because they do not involve "non-taxable receipts." (Dkt. 32 at 39). But the receipts at issue here are often taxable. 26 U.S.C. § 61(a)(2) (income subject to tax includes income derived from business activities). Thus, the case cited by the government squarely forecloses this argument. <u>Acker v. Comm'r</u>, 258 F.2d 568, 572 (6th Cir. 1958), <u>aff'd</u> 361 U.S. 87 (1959). Lastly, the plaintiffs' argument that a modest extension of a tax-reporting requirement constitutes the same type of "substantial expansion of federal authority" at issue in <u>NFIB</u>, <i>i.e.</i>, the requirement that individuals procure health insurance or be subject to a payment, is clearly wrong. (Dkt. 32 at 40 (citing <u>NFIB v. Sebelius</u>, 567 U.S. 519, 561 (2012)). And the plaintiffs fail to note how <u>NFIB</u> concluded: the Supreme Court upheld that mandate. <u>NFIB</u>, 567 U.S. at 574.

## III.   Conclusion.

Requiring taxpayers to report large commercial transactions to the IRS has been noncontroversial for decades. While those that wish to run afoul of the nation's tax laws might wish the Constitution allowed them to use cryptocurrency to hide these transactions from the IRS, that is plainly not the law. The Court should dismiss.

20

Date:   February 14, 2023                     DAVID A. HUBBERT
                                              Deputy Assistant Attorney General

                                              */s/ Kyle L. Bishop*
                                              KYLE L. BISHOP
                                              RYAN O. MCMONAGLE
                                              MOIRA E. GOODWIN
                                              Trial Attorneys, Tax Division
                                              U.S. Department of Justice
                                              P.O. Box 227
                                              Washington, D.C. 20044
                                              202-616-1878 (KLB)
                                              202-514-6866 (fax)
                                              Kyle.L.Bishop@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to those registered to receive it.

/s/ Moira E. Goodwin
MOIRA E. GOODWIN
Trial Attorney
United States Department of Justice, Tax Division