## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

| | |
|---|---|
| DAN CARMAN, *et al.*, | CIVIL ACTION NO. 5:22-149-KKC |
| Plaintiffs, | |
| v. | OPINION AND ORDER |
| JANET YELLEN, *in her official capacity as Secretary of the Treasury*, *et al.*, | |
| Defendants. | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on Defendants' jointly filed motions to dismiss the First Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim.[1]  (DE 29.)  For the following reasons, the Court grants the motion to dismiss for lack of subject-matter jurisdiction and denies the motion to dismiss for failure to state a claim as moot.

### BACKGROUND

Cryptocurrency operates as a medium for payments that allows individuals or entities to conduct transactions directly with each other without the use of financial institutions. (First Am. Compl. ¶ 4.)  Plaintiffs Dan Carman and Raymond Walsh are regular users of cryptocurrency.  (*Id.* ¶¶ 21, 23.)  Walsh owns and operates Plaintiff Quiet Industries Corp., a company that "mines" Bitcoin, a type of cryptocurrency.  (*Id.* ¶ 159.)  Plaintiff Coin Center is

---

[1] These defendants are Janet Yellen in her official capacity as Secretary of the Treasury, the United States Department of Treasury, Charles Rettig in his official capacity as the Commissioner of the Internal Revenue Service, the Internal Revenue Service, Merrick Garland in his official capacity as Attorney General, and the United States of America (collectively, "Defendants").

a non-profit organization "focused on the public policy issues facing digital asset technologies" such as cryptocurrency.  (*Id.* ¶ 22.)

## I.  The Nature of Cryptocurrency Transactions

In a typical cryptocurrency transaction, a user will generate a "private key" consisting of a randomized string of letters and numbers that is unique to that particular person.  (*Id.* ¶ 46.)  Unless otherwise shared, the private key remains private with that user.  (*Id.*)  The user's private key is linked to an "address," which also consists of random letters and numbers unique to that user.  (*Id.* ¶ 47.)  To initiate a cryptocurrency transaction, the receiver of the currency will provide his unique address to the sender.  (*Id.* ¶ 48.)  The sender then drafts a "transaction message" that specifies the quantity of cryptocurrency being transferred to that address.  (*Id.*)  The sender authorizes the transfer by digitally signing the message with his private key.  (*Id.* ¶ 49.)  Other cryptocurrency users called "miners" then review and validate the transactions by ensuring that the transaction message is correctly signed and that the sending address has sufficient cryptocurrency funds to complete the transaction. (*Id.* ¶ 50.)

These cryptocurrency transactions are maintained on online public ledgers.  (*Id.* ¶ 11.)  The ledgers list the addresses of the parties to the cryptocurrency transactions, the quantity of cryptocurrency transferred, and the time of the transaction.  (*Id.* ¶ 52.)  The listings do not include any personal identifying information.  (*Id.* ¶¶ 54-55.)  If users choose to keep their unique addresses private, then their transactions will remain private.  (*See id.* ¶ 68.)

## II.  The Amendment to 26 U.S.C. § 6050I

Plaintiffs seek declaratory and injunctive relief against the enforcement of 26 U.S.C. § 6050I, which functions as a reporting mandate for those engaging in certain cash transactions.  (First Am. Compl. at 1.)  In 2021, the Infrastructure Investment and Jobs Act

amended § 6050I. (*Id.*)   That amendment is the subject of Plaintiffs' First Amended Complaint. **The amendment is not effective until January 1, 2024.**  Infrastructure Investment and Jobs Act, Pub. L. 117-58, § 80603, 135 Stat. 429, 1341 (2021).

§ 6050I provides:

Any person—

(1) who is engaged in a trade or business, and

(2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions), shall make the return described in subsection (b) with respect to such transaction (or related transactions) at such time as the Secretary may by regulations prescribe.

26 U.S.C. § 6050I(a).  The amendment expands the definition of "cash" in subsection(a)(2) to include "any digital asset."  Infrastructure Investment and Jobs Act, Pub. L. 117-58, § 80603, 135 Stat. 429, 1341 (2021).  A "digital asset" is "any digital representation of value which is recorded on a cryptographically secured distributed ledger or any similar technology as specified by the Secretary [of the Treasury]."   *Id.* at 1340.   Both parties agree that cryptocurrency is presumably a digital asset.  (First Am. Compl. ¶ 3; DE 29-1 at 3.)

Therefore, the amendment will require a person who receives $10,000 in cryptocurrency through a trade or business transaction to disclose personal information—including the names, addresses, dates of birth, and Social Security numbers of the parties to the transactions—by filing a disclosure form (IRS Form 8300). § 6050I(b)(2); Department of the Treasury/Internal Revenue Service, IRS Form 8300, IRS.gov, https://www.irs.gov/pub/irs-pdf/f8300.pdf [hereinafter, "Form 8300"].   On the form, the recipient must disclose the amount of digital assets received, and the date and nature of each transaction.  Form 8300.  A recipient will also have to disclose the same information for related transactions that occur within a 12-month period and, in the aggregate, exceed $10,000 in cryptocurrency.  26 C.F.R. § 1.6050I-1(b).  Prior to filing the form, the recipient

3

must verify the identity of the sender by examining an appropriate form of documentation such as a driver's license or passport.  26 C.F.R. § 1.6050I-1(e)(3)(ii).  The recipient will have 15 days to file the disclosure form.  26 C.F.R. § 1.6050I-1(e)(1).  The IRS estimates that the average time needed to complete the form is 21 minutes.  Form 8300.

After filing the disclosure form, the recipient must maintain records of the form for five years.  26 C.F.R. § 1.6050I-1(e)(3)(iii).  On an annual basis, the recipient must provide a written statement to each sender that he disclosed to the IRS.  § 6050I(e); 26 C.F.R. § 1.6050I-1(f)(1).  The statement must include the aggregated amount of digital assets received from the sender, and the name, address, and phone number of the recipient.  § 6050I(e); 26 C.F.R. § 1.6050I-1(f)(2).

Violations of § 6050I are subject to civil and criminal penalties, the extent of which depends on the violator's intent.  *See* 26 U.S.C. §§ 6721, 7203.

## III.  Plaintiffs' Claims

Plaintiffs claim that they "use and intend to continue to use digital assets in transactions covered and affected by the reporting mandate" in the amended § 6050I.  (First Am. Compl. ¶ 19.)  Carman intends to receive payments of cryptocurrency over $10,000 in transactions for his services as a Bitcoin consultant and a miner of cryptocurrency.  (*Id.* ¶¶ 136-37.)  He also intends to use cryptocurrency for personal transactions, including donations to advocacy and religious organizations.  (*Id.* ¶¶ 138-39.)  Walsh regularly receives Bitcoin payments over $10,000 in transactions related to his role as owner and operator of Quiet Industries, and regularly spends over $10,000 in cryptocurrency transactions.  (*Id.* ¶¶ 160-61.)  Quiet Industries also receives Bitcoin payments over $10,000 in transactions from cryptocurrency users and from the Bitcoin software itself.  (*Id.* ¶ 171.)  Coin Center receives payments of over $10,000 in cryptocurrency for contributions to its advocacy activities, sponsorships for its fundraising events, and in exchange for tables, sponsorships, and

4

promotions at its annual dinner.  (*Id.* ¶¶ 149-50.)  Coin Center states that it "will arguably be required to report its donors' personal identifying information as a result of § 6050I."  (*Id.* ¶ 149.)

According to Plaintiffs, the disclosure forms will provide enough information about a given cryptocurrency transaction to allow the Government to identify the sender and the receiver involved in that transaction on the public ledger.  (*Id.* ¶ 106.)  By identifying the sender and receiver involved in a given transaction, Plaintiffs claim that the Government could then obtain the cryptocurrency addresses of those individuals or entities.  (*Id.* ¶ 107.)  Using those cryptocurrency addresses, the Government could then identify other transactions involving those individuals or entities on the public ledger, including transactions that are not subject to the amended § 6050I.  (*Id.*)  Upon request, the Government may disclose a Form 8300 to other federal agencies, and to state, local, and foreign agencies.  (*Id.* ¶ 120; 26 U.S.C. § 6103(l)(15).)  This would allow these entities to also obtain the transaction history of those listed on the forms.  (*Id.* ¶ 120.)  From Plaintiffs' perspective, the Government's access to the information included in the Form 8300 disclosures may create several harms.

For one, the amended § 6050I would lead Plaintiffs to "reveal" their "personal identifying information against [their] will" and improperly disclose other private information.  (First Am. Compl. ¶¶ 140, 149, 151, 167, 177.)  Relatedly, the Government could also use the public ledger to discover other, unreported transactions involving the "private and personal affairs" of Plaintiffs and their "expressive associations."  (*Id.* ¶¶ 143, 146.)  As a result, Carman claims that he is less likely to engage in expressive activities.  (*Id.* ¶146.)  Walsh claims that he is less likely to use cryptocurrency in some transactions because the disclosure requirements would intrude on his privacy.  (*Id.* ¶¶ 168-69.)  Carman also claims

that businesses are less likely to use Bitcoin, which will cause him to lose consulting business. (*Id.* ¶ 142.)  Coin Center claims that donors will be less likely to donate the contributions needed for advocacy activities.  (*Id.* ¶ 153.)  And Quiet Industries claims that it will likely lose business due to the amended § 6050I's effect on the business environment.  (*Id.* ¶ 175.)

Plaintiffs allege that they will also incur compliance costs associated with completing the Form 8300 disclosures and tracking all relevant transactions.  (*Id.* ¶¶ 145, 154, 165, 174.) Even though the amendment is not effective until January 1, 2024, Plaintiffs claim that the compliance costs are already accruing since the mandate may implicate transactions occurring a full year before the effective date.  (*Id.* ¶¶ 145, 154, 165.)

Finally, Plaintiffs state that compliance with the amendment's requirements presents logistical difficulties.  (*Id.* ¶¶ 155, 160, 175.)  For example, given the anonymity of the users in cryptocurrency transactions, recipients of cryptocurrency may be unable to identify the individuals or entities that they are required to list on the Form 8300 disclosures.  (*Id.* ¶ 126.) But failure to properly disclose the sender may lead to potential civil or criminal penalties. (*Id.* ¶¶ 170, 176.)

Plaintiffs bring the following claims for relief: (1) violation of the Fourth Amendment due to an unreasonable search (First Am. Compl. ¶¶ 184-212); (2) violation of the First Amendment right to associational privacy (*id.* ¶¶ 213-38); (3) violation of the Fifth Amendment right to due process because the amendment is void for vagueness (*id.* ¶¶ 239-55); (4) the amendment exceeds Congress's enumerated powers (*id.* ¶¶ 256-65); and (5) violation of the Fifth Amendment right against self-incrimination (*id.* ¶¶ 266-70).

Accordingly, Plaintiffs seek a declaration that the amended § 6050I is facially unconstitutional and an injunction to prevent the enforcement of the amended § 6050I.  (*Id.*

at 76.)  Defendants now file a motion to dismiss Plaintiffs' First Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim.  (DE 29.)

ANALYSIS

## I.    Justiciability

## A.    Governing Standards

Article III of the Constitution dictates that "[t]he power of the federal courts is limited to hearing actual cases and controversies."  U.S. Const. art. III, § 2; *Miller v. City of Wickliffe*, 852 F.3d 497, 502 (6th Cir. 2017).  A claim is not "properly suited for resolution by the federal courts," or "justiciable," if the claim is unripe or the plaintiff lacks standing to raise the claim. *Rucho v. Common Cause*, 139 S. Ct. 2484, 2491 (2019); *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008).  In those instances, the court will lack subject-matter jurisdiction over the claim.  *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017); *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002).  A facial challenge to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "takes the material allegations of the complaint as true and construes them in a light most favorable to the nonmoving party."  *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 745 (6th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).

Here, Defendants bring a facial challenge under Rule 12(b)(1) to the Court's subject-matter jurisdiction over Plaintiffs' claims, arguing that Plaintiffs' claims are unripe and that they lack standing to raise their claims.

### 1.    Ripeness

"Ripeness doctrine exists to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities."  *Norton*, 298 F.3d at 554 (citation and quotation marks omitted).  To determine if a claim is ripe, courts generally examine (1) if the alleged harm is likely to "come to pass;" (2) if "the factual record is sufficiently developed to allow for adjudication;" (3) "the extent to which the enforcement authority's legal position

is subject to change before enforcement;" and (4) the potential "hardship to the parties if judicial review is denied." *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)); *Norton*, 298 F.3d at 554. The second and third factors bear on the "fitness of the issues for judicial determination." *Ammex*, 351 F.3d at 706. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Fam. Tr. Found. of Ky., Inc v. Wolnitzek*, 345 F. Supp. 2d 672, 688 (E.D. Ky. 2004) (citation and quotation marks omitted). For pre-enforcement challenges, a case is ordinarily ripe for review "only if the probability of the future event occurring is substantial and of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Norton*, 298 F.3d at 554 (citation and quotation marks omitted).

### 2.      Standing

A plaintiff has standing to pursue a claim if the plaintiff establishes (1) an injury in fact; (2) causation; and (3) redressability. *ACLU v. NSA*, 493 F.3d 644, 659 (6th Cir. 2007). A plaintiff fulfills the injury in fact element upon a showing of "concrete and actual or imminent" harm, rather than harm that is merely "hypothetical, conjectural, or speculative." *Id.* at 656, 659. Causation requires "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id.* at 659 (citations and quotation marks omitted). And redressability means that the requested relief is likely to "redress the alleged injury." *Id.* (citations and quotation marks omitted).

As relevant here, a plaintiff may have standing to bring a pre-enforcement challenge before the "actual completion of an injury in fact." *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 832 (6th Cir. 2001). But to warrant pre-enforcement review, the plaintiff "must show

actual present harm or a significant possibility of future harm." *Id.* (citation and quotation marks omitted).

**B.     Claims**

"As there is no obligation to favor one of these justiciability doctrines over the other and as none of these questions goes to the merits of the case, [the Court] may address them in any sequence. . ." *Warshak*, 532 F.3d at 525.  Therefore, for each claim, the Court will only address both ripeness and standing as necessary and in the order that makes the most logical sense for that claim.

**1.     Fourth Amendment Claim**

Ripeness concerns "have particular resonance in the context of Fourth Amendment disputes." *Warshak*, 532 F.3d at 528.  This is due to the "context specific nature of Fourth Amendment reasonableness." *Hightower v. City of Grand Rapids*, 256 F. Supp. 3d 742, 754 (W.D. Mich. 2017).

These concerns permeate every factor of the ripeness inquiry for Plaintiffs' Fourth Amendment claim, which is based on a purportedly unreasonable search by the Government. Altogether, the ripeness factors show that Plaintiffs' Fourth Amendment claim is premature.

The alleged harm arising from Plaintiffs' Fourth Amendment claim is the invasion of their reasonable expectations of privacy and their property rights through the collection of digital information that reveals their personal affairs.  (First Am. Compl. ¶¶ 190-91, 196-201).  The Court emphasizes that the amended § 6050I is *not yet effective*, and therefore, Plaintiffs are not yet required to disclose *any* information related to cryptocurrency transactions under the amendment.  Nonetheless, the Court cannot find that this harm is likely to come to pass even upon the effective date of the amendment.  Plaintiffs' theory of harm for this claim is apparently as follows: (1) as recipients of cryptocurrency, Plaintiffs will disclose personal information about themselves and the senders of the cryptocurrency to the

Government by filing disclosure forms that detail their business transactions OR that same information will be disclosed in transactions in which Plaintiffs are the senders of the cryptocurrency; (2) using the information in forms filed by Plaintiffs or by recipients engaging in transactions with Plaintiffs, the Government will go to the public ledger, identify those transactions, and therefore, identify the senders and receivers involved in those transactions; (3) by identifying the senders and receivers involved in those transactions, the Government will then obtain the cryptocurrency addresses of those individuals or entities; (4) and, by using those cryptocurrency addresses, the Government will then search for other transactions involving those individuals or entities on the public ledger, including personal transactions that are not otherwise subject to § 6050I and that Plaintiffs do not desire to disclose to the Government.  (*Id.* ¶¶ 106-07.)  For the alleged harm to materialize, the Government would have to complete all four of these steps, none of which Plaintiffs allege has occurred.  And, if the Government does not complete all four links of the chain, the harm will not arise.  With all these links in the chain, the harm is entirely "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all."  *Wolnitzek*, 345 F. Supp. 2d at 688.  Most tellingly, Plaintiffs do not submit any allegations to indicate that the Government will indeed use the information listed in the Form 8300 disclosures to gather personal information about Plaintiffs on the public ledger.  *Warshak*, 532 F.3d at 526 (finding that a claim depended on "contingent future events that may not occur as anticipated, or indeed may not occur at all" because the Court had "no idea" if the government would search the plaintiff's email account "in the future" and had "plenty of reason to doubt that it will") (citations and quotation marks omitted).  The probability of the Government doing so is not substantial enough to warrant judicial review, weighing against a finding of ripeness.

Moreover, the factual record is not sufficiently developed enough for the Court to adjudicate Plaintiffs' Fourth Amendment claim—the First Amended Complaint contains no

allegations that a search has even occurred or from which the Court could assess whether a hypothetical search was unreasonable. Currently, the Court has no facts to analyze for Plaintiffs' Fourth Amendment claim, and this factor weighs against a finding of ripeness.

The enforcement agency's legal position is also subject to change in this case. Congress has delegated rulemaking authority for § 6050I to the Department of Treasury. *See* 26 U.S.C. § 7805(a) ("[T]he Secretary [of the Treasury] shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.") The Department of the Treasury's guidance on the revised reporting obligations under the amended § 6050I remains pending. *See* Department of the Treasury/Internal Revenue Service, *Returns Relating to Digital Assets in Excess of $10,000 Received in a Trade or Business  RIN: 1545-BQ45*, Reginfo.gov (Fall 2022), https://www.reginfo.gov/public/do/eAge ndaViewRule?pubId=202210&RIN=1545-BQ45.[2]  Those regulations are currently in the "Proposed Rule Stage." *Id.*  Because Plaintiffs are not yet required to report their cryptocurrency transactions under § 6050I and because the pending regulations could alter the compliance requirements as interpreted by Plaintiffs, this factor weighs against judicial review. *Ass'n of Am. Physicians & Surgeons, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 224 F. Supp. 2d 1115, 1123-24 (S.D. Tex. 2002), *aff'd,* 67 F. App'x 253 (5th Cir. 2003) (concluding that a Fourth Amendment claim was not ripe where actual compliance was not yet mandated, and the agency could promulgate new rules related to the subject statute that may render

---

[2] In ruling on a facial attack to subject-matter jurisdiction under Rule 12(b)(1), the Court may consider public records. *See Meiman v. Kenton Cnty.*, Civil Action No. 10-156-DLB, 2011 WL 721478, at *10 n.9 (E.D. Ky. Feb. 22, 2011); *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 885 (N.D. Ohio 2010).  The status of the proposed regulation, as listed on the Government's website for pending regulatory actions, is a public record.  Therefore, the Court may consider it.

the complaint moot).  Due to the "possibility of intervening agency action," Plaintiffs' Fourth Amendment claim is not yet ripe.  *Id.*

Finally, if the Court denies review of Plaintiffs' Fourth Amendment claim, the hardship imposed on Plaintiffs is minimal.  Plaintiffs do not have to file Form 8300s for cryptocurrency transactions until January 1, 2024, so they have not yet disclosed any information about their cryptocurrency transactions to the Government under that amendment.  The nature of the information that they are required to disclose may change due to intervening agency guidance.  And, notably, Plaintiffs provide no allegations to support that the Government will actually use the information disclosed to discover other information about Plaintiffs on the public ledger.  This weighs against a finding that Plaintiffs' Fourth Amendment claim is ripe.

As a whole, these factors indicate that Plaintiffs' Fourth Amendment claim is not ripe for consideration.  Therefore, the Court dismisses Plaintiffs' Fourth Amendment claim for lack of subject-matter jurisdiction.

### 2. First Amendment Claim

"Generally, standing is found based on First Amendment violations where the rule, policy or law in question has explicitly prohibited or proscribed conduct on the part of the plaintiff."  *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 711 (6th Cir. 2015).  In effect, this means that the plaintiff "must censor [himself] to avoid violating the law in question."  *Miller*, 852 F.3d at 506.  "Absent proof of a concrete harm, where a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists."  *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 609-10 (6th Cir. 2008).  A plaintiff's allegations of a "subjective chill" are therefore insufficient to establish standing.  *ACLU*, 493 F.3d at 660-61.  Instead, a plaintiff must show that the Government's enforcement of the statute is "imminent."  *Morrison*, 521 F.3d at 610.

To show that enforcement is imminent, the plaintiff must "point to some combination of the following factors": (1) "a history of past enforcement against the plaintiffs or others;" (2) "enforcement warning letters sent to the plaintiffs regarding their specific conduct;" (3) "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action;" and (4) the Government's "refusal to disavow enforcement of the challenged statute against a particular plaintiff" or other "evidence of intention to enforce." *Plunderbund Media, L.L.C v. DeWine*, 753 F. App'x 362, 366-67 (6th Cir. 2018) (citations omitted).   As these factors illustrate, "subjective chill requires *some specific action* on the part of the [Government] in order for the litigant to demonstrate an injury-in-fact." *Morrison*, 521 F.3d at 609 (emphasis added).

"Although the ripeness requirement is somewhat relaxed in the First Amendment context, there nonetheless must be a credible fear of enforcement." *Norton*, 298 F.3d at 554. Therefore, both the standing and ripeness inquiries depend on if the "threat of enforcement" is "imminent."  *Id.*  In addition, for ripeness, the plaintiff must "sufficiently allege[] an intention to refuse to comply with the statute." *Id.*

Due to these overlapping inquiries, "[t]line between Article III standing and ripeness in preenforcement First Amendment challenges has evaporated." *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016).  Courts analyze those inquiries simultaneously. *Id.*  Therefore, this Court will do the same.

Plaintiffs allege that the amended § 6050I will "chill" protected associational activities in violation of the First Amendment.  (First Am. Compl. ¶ 229.)  For example, Carman claims that the amendment makes him less likely to engage in associational activities.  (*Id.* ¶ 146.) Coin Center claims that its donors are less likely to donate because donors may face retaliation for controversial viewpoints.  (*Id.* ¶¶ 153, 222.)  Moreover, the amendment would

"deter the associational activities of those who would prefer to remain anonymous" due to "concern about social ostracism" and would "discourage[] proponents of controversial viewpoints from taking action because it exposes them to harassment or retaliation." (*Id.* ¶¶ 221-22.)

Plaintiffs do not allege that the amended § 6050I itself prohibits or proscribes their associational activities—the statute only requires that they disclose details related to "trade or business" transactions that exceed $10,000 in cryptocurrency. § 6050I(a). Plaintiffs do not claim that they will have to censor themselves to avoid violating the amended § 6050I but rather, to avoid revealing associational activities that they wish to keep private. Instead, Plaintiffs attempt to base their assertion of standing on the inhibition of speech, arguing that the amendment will "chill" the associational activities of themselves and others by making them less likely to engage in those activities. This is insufficient to establish standing unless Plaintiffs can show that the Government will imminently enforce the amended § 6050I against them.

Based on the relevant factors, Plaintiffs cannot show that enforcement of the amended § 6050I is imminent as it relates to them. To support that there is a past history of enforcement of the statute, Plaintiffs claim that Carman's law practice was previously subject to audit hearings under the pre-amendment version of §6050I. (First Am. Compl. ¶ 179.) However, Plaintiffs do not allege that those audits culminated in any enforcement actions where penalties were actually imposed. Those audits also only involved the prior version of the statute, and the Government may take a different approach in enforcing the amended statute. Plaintiffs do not allege a history of Government enforcement against others. Nor do they claim that they have ever received any enforcement warning letters relating to this statute. Plaintiffs also do not pinpoint any attribute of the amended § 6050I that makes enforcement easier. Importantly, Plaintiffs, at this point, cannot predict (and the Court

14

cannot guess) how the Government may enforce the statute while the Department of Treasury's guidance on the amendment is pending.  Plaintiffs provide no other allegations to demonstrate the Government's intent to enforce the amended § 6050I.  Plaintiffs state that "[t]he government has not disavowed enforcement of the amended §6050I against any of the plaintiffs." (First Am. Compl. ¶ 179.)  Even if the Court construed this conclusory allegation as true for purposes of this motion, on balance, the factors do not show that enforcement of the amended §6050I against Plaintiffs is imminent.  Without proper allegations of the Government's imminent enforcement of the statute against them, Plaintiffs cannot establish standing.

At bottom, Plaintiffs have alleged no specific action of the Government that indicates that it will imminently enforce the amended § 6050I against them.  For Plaintiffs' theory of "subjective chill" to attain any plausibility, Plaintiffs would need to allege that the Government will actually use the information in the Form 8300 disclosures to gather additional information about Plaintiffs' associational activities by tracking their transactions on the public ledger.  Plaintiffs do not set forth any plausible allegations indicating that the Government will take such action.  In any event, the alleged harm is ultimately contingent on actions that the Government may or may not take.  The harm is hypothetical, conjectural, and insufficient to establish an injury in fact.  And "the mere existence, *without more*, of a governmental investigative and data-gathering activity is insufficient to present anything more than allegations of a subjective chill of First Amendment speech." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 764 (6th Cir. 2019) (emphasis in original) (citation and quotation marks omitted).  Plaintiffs are constrained only by their own subjective chill.  Keeping all of these factors in mind, Plaintiffs have not met their burden to establish standing to bring their First Amendment claim.

To the extent that Plaintiffs argue that their "injury in fact" is based on the potential reputational injury caused by the alleged disclosure of their associational activities, that argument also fails. Where a plaintiff claims a chilling effect, reputational injury *may* be sufficient to demonstrate an injury in fact. *Parsons*, 801 F.3d at 711-12. However, those claims still must include "concrete allegations" of harm. *Id.* at 711. Plaintiffs do not specifically allege that they are personally involved in any associational activities that could harm their reputations if those activities were ever exposed. Since Plaintiffs do not point to any concrete harm that may arise from the disclosure of their associational activities, they cannot rely upon reputational injury to establish standing.

Plaintiffs also argue that they are harmed by the amended § 6050I because it will force the disclosure of their personal information to the Government. (*See* DE 32 at 22-23.) The Court reminds Plaintiffs that the amended § 6050I only applies to "trade or business" transactions. § 6050I(a). Plaintiffs allege that "trade or business" transactions "will directly mandate the reporting of expressive associations." (First Am. Compl. ¶ 232.) However, the First Amended Complaint contains no allegations that any plaintiff has or will engage in a particular "trade or business" transaction that directly implicates protected associational activity. Absent any such claim, the alleged injury is merely speculative.

Similarly, Plaintiffs' First Amendment claim is not ripe because Plaintiffs have not established a credible fear of enforcement. For the reasons given above, the threat of enforcement of the amended § 6050I against Plaintiffs is not sufficiently imminent. Further, Plaintiffs do not allege that they have an intention to refuse to comply with the amended § 6050I. Therefore, the Court lacks subject-matter jurisdiction over Plaintiffs' First Amendment claim on this additional ground.

16

Accordingly, the Court dismisses Plaintiffs' First Amendment claim for lack of subject-matter jurisdiction because Plaintiffs do not have standing to bring the claim, and the claim is not ripe.

### 3.    Fifth Amendment Claim – Void for Vagueness

For vagueness challenges outside of the context of the First Amendment, a facial challenge to a statute is generally unripe. *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 292 (6th Cir. 1997). Instead, courts should examine the statute "in light of the facts of the particular case at hand and not as to the statute's facial validity." *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999). But if the statute imposes criminal sanctions, then a court may consider a facial challenge for vagueness. *Id.* Nonetheless, a plaintiff's vagueness challenge is premature where "there has been no final agency action interpreting the provisions of the statute alleged to be vague." *Nat'l Rifle Ass'n of Am.*, 132 F.3d at 292.

In light of this precedent and consistent with the general precepts of the ripeness doctrine, the Court's review of the amended § 6050I is inappropriate at this time. Because Plaintiffs' void for vagueness claim is a facial challenge that falls under the Fifth Amendment rather than the First Amendment, the claim is not "sufficiently developed to allow for adjudication" by its nature. *Norton*, 298 F.3d at 554. By itself, the fact that the claim is a facial challenge does not necessarily render the claim unripe since the amended § 6050I carries with it the possibility of criminal sanctions for willful noncompliance. *See* § 7203. However, Plaintiffs' void for vagueness claim is premature because the Department of the Treasury's guidance on the revised reporting obligations under the amended § 6050I remains pending. "A federal court should not intervene and determine whether a statute enacted by Congress is unconstitutionally vague on its face before the agency with rulemaking authority

17

has had an opportunity to interpret the statute." *Nat'l Rifle Ass'n of Am.*, 132 F.3d at 292. That is, as a result of this pending agency action, the Department of Treasury's "legal position" is likely "to change before enforcement." *Ammex*, 351 F.3d at 706. Without the benefit of final agency action interpreting the terms of the amended § 6050I, the Court cannot assess the likelihood that Plaintiffs will face fines or criminal sanctions if they fail to the comply with the statute due to confusion over "what the law demands" in the context of digital assets. (First Am. Compl. ¶¶ 241-242, 244, 248-49, 251, 253.) For the same reason, the Court cannot evaluate the potential hardship Plaintiffs may face by denying review of the statute for vagueness. At this juncture, Plaintiffs' void for vagueness claim is not ripe.

Accordingly, the Court dismisses Plaintiffs' Fifth Amendment void for vagueness claim for lack of subject-matter jurisdiction.

### 4.     Enumerated Powers Claim

In claiming that Congress exceeded its enumerated powers by passing the amended § 6050I, Plaintiffs state that Congress has implemented "a disproportionate and draconian surveillance regime derived from a constitutional provision to which it bears little relation," resulting in "broad surveillance on the daily transactions of people who use a technology that the government disfavors." (First Am. Compl. ¶ 263.) Therefore, the alleged harm arising from this claim is seemingly the Government's "surveillance" of those whose cryptocurrency transactions are disclosed under the amended § 6050I. The "surveillance" of users is similar to an invasion of privacy, the harm alleged in connection with Plaintiffs' Fourth Amendment claim. The Court's ripeness analysis here follows a similar analysis and shows that this claim is premature.

Currently, the Court cannot conclude that the purported surveillance regime is likely to pass because the First Amended Complaint is devoid of any allegation to support that the Government will actually use the information obtained from the Form 8300 disclosures to

track Plaintiffs' transactions on the public ledger.  To track unrelated transactions, the Government would have to undertake a multi-step process to use the information provided on the disclosure forms to discover these transactions.  In this way, the purported surveillance regime is entirely "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Wolnitzek*, 345 F. Supp. 2d at 688.  Moreover, Plaintiffs are not yet required to comply with the amended § 6050I and therefore, have not disclosed the information that they claim the Government could use to institute such a regime.  Accordingly, this factor weighs against a finding of ripeness.

Since the amended § 6050I is not yet effective, the factual record is not sufficiently developed for the Court to adjudicate Plaintiffs' enumerated powers claim.  The Court cannot assess whether the amendment has created a surveillance regime before Plaintiffs have filed any disclosure forms pursuant to the amendment.  Without allegations that the Government has actually used Plaintiffs' information to track their other unrelated transactions, the Court cannot consider this claim, and this factor weighs against a finding of ripeness.

The Department of Treasury's legal position is also likely to change before the amended § 6050I goes into effect, given the Department's pending guidance on the statute.  The pending regulation could alter the nature of Plaintiffs' disclosures, their compliance requirements, and thus, the potential that the Government's alleged surveillance regime will come to fruition.  Therefore, judicial review is inappropriate.  This factor weighs against a finding of ripeness.

If the Court declines to reach Plaintiffs' claim that Congress exceeded its enumerated powers, Plaintiffs are unlikely to face significant hardship as a result.  The amended § 6050I will not require Plaintiffs to disclose information until 2024, and regardless, Plaintiffs have not submitted any plausible allegation from which the Court can conclude that the Government will use the information disclosed to implement a surveillance regime to track

their other unrelated transactions. This factor also weighs against judicial review and a finding of ripeness.

Altogether, the ripeness factors indicate that this claim is premature. Therefore, the Court dismisses Plaintiffs' claim that Congress exceeded its enumerated powers for lack of subject-matter jurisdiction.

### 5.      Fifth Amendment Claim – Self-Incrimination

As a matter of law, a pre-enforcement self-incrimination challenge is not ripe until the plaintiff asserts his Fifth Amendment privilege against self-incrimination. *See Connection Distrib. Co. v. Holder*, 557 F.3d 321, 342-43 (6th Cir. 2009). Here, there are no allegations that any plaintiff has asserted the Fifth Amendment privilege against self-incrimination. Therefore, Plaintiffs' Fifth Amendment self-incrimination claim is not ripe, and the Court dismisses it for lack of subject-matter jurisdiction.

### 6.      Other Alleged Harms and Injuries

The Court would be remiss to leave unacknowledged the fact that Plaintiffs dedicate a significant portion of their First Amended Complaint and their briefings discussing the compliance costs associated with the amended § 6050I and the potential harms to Plaintiffs' business revenues that may result. (First Am. Compl. ¶¶ 142, 145, 153-54, 165, 174-75; DE 32 at 21-22, 24.) Logically, each alleged harm must result from at least one of the violations underlying Plaintiffs' claims, and by extension, the hardship related to that claim for purposes of the ripeness inquiry. For standing, "the injuries being alleged must be described as precisely and unambiguously as possible" in connection with each claim since a given claim is "intertwined" with its own particular injury. *ACLU*, 493 F.3d at 653.

However, Plaintiffs do not explicitly connect either of these alleged harms or injuries to any claims raised. Compliance costs and decreased revenues do not clearly result from a Fourth Amendment violation due to an unreasonable search, a First Amendment violation of

the right to associational privacy, a Fifth Amendment violation of the right to due process because of an unconstitutionally vague statue, or a Fifth Amendment violation of the right against self-incrimination.   Construing the allegations in the light most favorable to Plaintiffs, the only claim from which these harms or injuries may plausibly result is from Plaintiffs' claim that Congress exceeded its enumerated powers.   But, again, Plaintiffs never allege that compliance costs and decreased revenues result from that claim, instead focusing on the Government's implementation of a surveillance regime.   Therefore, the Court's analysis of whether these harms are ripe is untenable.   As to whether these harms establish an injury in fact, Plaintiffs have neither "plead [the] components [of standing] with specificity," *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999), nor "clearly allege[d] facts demonstrating standing," *see Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 543-44 (6th Cir. 2021) (citation, quotation marks, and ellipses omitted).   Without an explicit connection from each alleged injury to a specific claim, Plaintiffs have not asserted a "plausible claim" of standing.   *See Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 543-44 (applying *Twombly*'s plausibility test to a motion to dismiss on standing grounds).

Even if the Court were to accept that compliance costs and decreased business revenues result from Plaintiffs' claim that Congress exceeded its enumerated powers, these allegations are premature.   While Plaintiffs may accrue compliance costs before the amended § 6050I is effective, those costs are merely speculative at this point, given the Department of Treasury's pending regulation that may alter the compliance requirements as envisioned by Plaintiffs.   The potential harm to Plaintiffs' business revenues is hypothetical and conjectural—a decrease in revenues is contingent on events that may never materialize. Therefore, these alleged harms are insufficient to render any of Plaintiffs' claims justiciable.

The Court accordingly grants Defendants' motion to dismiss for lack of subject-matter jurisdiction and dismisses Defendants' First Amended Complaint in its entirety. To the extent that parties request oral argument, the Court finds oral argument on the motion is unnecessary because the motion is resolvable on the briefings. Accordingly, the Court also denies that request as moot.

### Conclusion

The Court hereby ORDERS as follows:

1.  Defendants' motion to dismiss for lack of subject-matter jurisdiction (DE 29) is GRANTED;

2.  Defendants' motion to dismiss for failure to state a claim (DE 29) is DENIED as moot;

3.  Any requests for oral argument are DENIED as moot;

4.  All other pending motions (DE 26) are DENIED as moot;

5.  Plaintiffs' claims are DISMISSED without prejudice;

6.  This matter is STRICKEN from the Court's active docket; and

7.  The Court will enter a judgment consistent with this order.

This 19th day of July, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY